UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL EDWARD RODGERS,<br><br>    Petitioner,<br><br>    v.<br><br>RANDY VALLEY, Warden ISCI,<br><br>    Respondent. | Case No. 1:22-cv-00153-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Pro se Petitioner Daniel Edward Rodgers' Petition for Writ of Habeas Corpus was reassigned to this Court for adjudication. (Dkt. 2). Petitioner was convicted by jury of first degree murder for the death of Preston Murr that occurred on June 27, 1987. Murr was shot in the back of the head. His body was dismembered in Rodger's basement. Murr's body parts were placed in plastic bags and taken to another location for disposal in the trunk of a car owned by Petitioner's wife. (State's Lodging B-8, pp. 2-3).

Petitioner was sentenced "to the custody of the State Board of Correction for the State of Idaho for the FIXED term of life; no portion of the sentence to be indeterminate; to be held in confinement without possibility of parole." (State's Lodging A-3, p. 2) (emphasis in original).

Evidence presented at the sentencing hearing showed that Rodgers had a prior conviction for second degree murder for a death carried out in similar fashion. Explaining the reasoning behind the sentence for Murr's murder, the district court stated in its written findings of fact and conclusions of law:

**MEMORANDUM DECISION AND ORDER - 1**

> The defendant is a dangerous person. He should never be allowed to go free. Nevertheless, he can be controlled in a prison setting. Actual execution of a death sentence, if imposed, is uncertain and unlikely. Under our present system of laws, the interest of the State of Idaho in the administration of a just sentence, in the certainty of protecting society, and in the certainty of punishment, best will [be] served by imposition of a fixed life sentence with the expectation that the defendant will remain in prison until his death.

(State's Lodging B-4, p. 20).

In 2017, Rodgers began asserting that his sentence was intended to be no longer than thirty years, based on historical statutes and interpretation. He argued that the "legislature has changed the definition of life to equate to a natural life," but also noted that "the change was not retroactive." (State's Lodging E-1, p. 7). He asserted that, during his criminal proceedings, he was informed that the maximum determinate portion of a life sentence was not to exceed thirty years. *Id*. He relied on clerk minutes from his arraignment hearing not contained in the official record ("Arraignment Minutes"). (*Id*., p. 9). The Arraignment Minutes show that, in documenting Petitioner's arraignment, the clerk who created the minutes wrote that "Daniel Rodgers can receive up to a maximum determinate sentence of life not to exceed thirty (30) years with no less than ten (10) years." (*Id*.). For purposes of this Order, the Court will assume for the sake of argument that the clerk correctly recorded what the state judge informed Petitioner about sentencing during the arraignment hearing.

Having no success in state court, Petitioner filed his federal Petition for Writ of Habeas Corpus. Upon initial review of this case, Judge B. Lynn Winmill identified several threshold procedural issues, including potential statute of limitations and procedural default bars based on the fact that Rodgers had notice of the Arraignment Minutes content and existing statutes at the time of his sentencing and direct appeal, but failed to make that argument. In this action, Judge

**MEMORANDUM DECISION AND ORDER - 2**

Winmill ordered the parties to produce the text of relevant historical statutes and any additional state court lodgings available, and to file briefs addressing only a few narrow issues. These items have been filed. (Dkts. 12, 14, 15). Because the complex preliminary procedural issues may require evidentiary development, the most efficient way to adjudicate the Petition is to consider the merits of Petitioner's claim that he is being held past his full-term release date.[1]

## REVIEW OF THE PETITION

### 1. Applicable Standard of Law

Federal habeas corpus relief is available to petitioners held in custody under a state court judgment that violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

The Court takes judicial notice of the records from Petitioner's state court proceedings lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). Respondent has lodged records (Dkt. 13), and Petitioner has lodged records (Dkt. 15),

---

[1] Federal habeas corpus law provides for various exceptions to the timeliness and procedural default rules. Determining whether any exception applies usually prolongs habeas proceedings because parties are permitted to submit extra-record evidence. Therefore, it is often more judicially efficient to rule on the merits of the claims. *See Lambrix v. Singletary*, 520 U.S. 518 (1997) (federal courts are not required to address a procedural issue before deciding against the petitioner on the merits); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

**MEMORANDUM DECISION AND ORDER - 3**

but the parties have not located all of the state court documents associated with Petitioner's thirty-four-year-old murder conviction, including the trial transcript. However, the Court finds that adjudication of Petitioner's case does not require any further records, nor is it necessary to have the parties prepare a narrative account of any hearings for which transcripts do not exist. *See* Rule 5(c) of the Rules Governing Habeas Corpus Cases. Even assuming the Arraignment Minutes correctly reflect the judge's words, Petitioner is not entitled to relief.

A claim that a person is being held past their full-term release date is cognizable under the Eighth Amendment, but it does not ripen until the full-term release date arrives. *See James v. Walsh*, 308 F.3d 162, 168 (2d Cir. 2002) (successive petition context) ("James could not have argued that he was in custody in violation of laws of the United States before the time when, according to his calculations, he should have been released."). As of 2017, Petitioner had served thirty years. (State's Lodging E-1, p. 6).

### 2. Historical Statutes and State Court Procedural Facts

Beginning in 1986, the Unified Sentencing Act (Idaho Code § 19-2513) newly required sentencing courts to include in each criminal judgment notice of the minimum period of incarceration before parole eligibility:

> The Court *shall* specify a minimum period of confinement and *may* specify a subsequent indeterminate period of custody. The court shall set forth in its judgment and sentence the minimum period of confinement and the subsequent indeterminate period, *if any*, provided, that the aggregate sentence shall not exceed the maximum provided by law.

Idaho Code § 19-2513(1) (emphasis added); *see* Idaho Session Laws Ch. 232, Sec. 3, p. 640).[2]

Prior to 1986, the Idaho parole statute specified that a person convicted of second degree murder was not eligible for parole until they had served "at least one-third" of their sentence and that no person serving a life sentence could be eligible for parole until they had served at least ten years. *See* I.C. § 20-223; *see* Idaho Session Laws Ch. 232, Sec. 5, p. 640 (stricken through portion). Convicted felons often were confused about how many years they had to serve before becoming parole eligible because their judgments did not plainly say so. In addition, courts reviewing excessive sentence claims needed a "benchmark" to analyze how long a felon likely would serve in prison.

To resolve these uncertainties, state courts began to use a calculation of "one-third of the facial length of an indeterminate sentence . . . as the presumptive measure of confinement, absent a contrary indication in the record." *State v. Sanchez*, 769 P.2d 1148, 1149 (Idaho Ct. App. 1989). Using this calculation, the state courts used the following rule: "[A]ll defendants sentenced to less than life imprisonment become eligible for parole after ten years or less. Stated differently, sentences of thirty years or more must be treated for purposes of parole eligibility as effective life sentences." *King v. State*, 456 P.2d 254, 260 (Idaho 1969), *superseded by statute as stated in State v. Shanahan*, 445 P.3d 152 (Idaho 2019).

However, after 1986, "this one-third 'rule of thumb' [was] no longer appropriate in cases where a minimum period of confinement [was] specified by the judge under the Unified Sentencing Act." *Sanchez*, 769 P.2d at 1149. Rather, the "probable measure of confinement" is

---

[2] Relevant historical statutes are located at https://legislature.idaho.gov/wp-content/uploads/sessionlaws/sessionlaws _1986.pdf.

**MEMORANDUM DECISION AND ORDER - 5**

"the minimum period" set forth in the judgment of conviction. *Id*. The minimum period of confinement "is often referred to as the 'fixed term' or the 'determinate term.'" *State v. Anderson*, 266 P.3d 496, 498 (Idaho Ct. App. 2011). The "unified sentence" incudes both the minimum period and any indeterminate period of custody. *Id*.

Importantly, the statute requires the state court to specify only the *minimum* imprisonment term in the judgment; it is discretionary or optional to specify a maximum term. I.C. § 19-2513. As *Anderson* explains, the minimum term is the *fixed* term. It is easy to become confused when a fixed life term is *both* the minimum *and* the maximum term, For example, one might think that a fixed life sentence is only the maximum term. Nevertheless, the statute classifies the "fixed term" as the *minimum* term—and that is *all* the statute requires. *See State v. Thomas*, 991 P.2d 870, 876 (Idaho Ct. App. 1999) ("At the time the murder was committed, the maximum penalty for first degree murder was death. Thomas' minimum period of confinement is the rest of her natural life.").

In 1986, the murder punishment statutes were amended to conform to the Unified Sentencing Act. Idaho Code § 18-4004, which provides the only possible sentences for first degree murder are death or life imprisonment, newly stated that any sentence of life imprisonment must specify a minimum fixed term of not less than ten years, during which the defendant is not eligible for parole. *See* 1986 Idaho Sess. Laws Ch. 232, Sec. 2, p. 639.

The Unified Sentencing Act and the 1986 version of I.C. § 18-4004 were in place when Petitioner committed his crime in 1987 and was sentenced in 1988. On direct appeal, Petitioner challenged his sentence as excessive, among other claims raised. (State's Lodging B-1). The Idaho Court of Appeals and the Idaho Supreme Court affirmed Petitioner's conviction and

**MEMORANDUM DECISION AND ORDER - 6**

sentence. (*See* State's Lodgings B-4 and B-8). The judgment became final in 1991. (*See* State's Lodging B-8.)

As noted above, in 2017, Petitioner filed a pro se motion to correct an illegal sentence under Idaho Criminal Rule 35(a), relying on the Arraignment Minutes to assert that, after thirty years, he was entitled to release. (State's Lodging E-1, pp. 6-8). The state district court denied the Rule 35 motion. (State's Lodging E-1, pp. 17-21). The court recognized that at the time Petitioner was convicted of first degree murder, the trial court had only three sentencing options under I.C. § 18-4004:  a death sentence, an indeterminate life sentence with a minimum period of confinement of ten years, or a fixed life sentence. (State's Lodging E-1, p. 19). The state district court found that (1) Petitioner's judgment of conviction showed that a fixed life sentence was pronounced; and (2) on direct appeal, the appellate courts determined that the fixed-life sentence was a legal sentence. (*Id.*, pp. 19-20). While the Arraignment Minutes provided by Petitioner did not appear in the court's file, the state court determined that, even assuming the court misinformed Petitioner at the arraignment, the mistake did not render the longer sentence illegal. (*Id.*, p. 20). The Idaho Court of Appeals affirmed the state district court's denial of the Rule 35 motion. (State's Lodging F-3). The Idaho Supreme Court denied the petition for review. (State's Lodging F-5).

In 2021, Petitioner filed a state habeas petition, raising arguments similar to those raised in his Rule 35(a) motion. (State's Lodging G-2). The state district court dismissed the petition without serving the respondent, concluding that an Idaho habeas corpus petition is not a proper procedural mechanism to challenge the validity of an underlying sentence. (State's Lodging G-3 (citing *Warren v. Craven*, 271 P.3d 725, 728 (Idaho Ct. App. 2012)); I.C. § 19-4203. The court

**MEMORANDUM DECISION AND ORDER - 7**

decided that, even if it were to rule on Petitioner's claim, it was "clearly without merit." (*Id*., pp. 3-4 n.4). The Idaho Supreme Court conditionally dismissed the appeal. (State's Lodging G-6). Petitioner attempted to reinstate his appeal through the state district and magistrate courts, but was unsuccessful. (*See* State's Lodging G-5).

### 3. Discussion of Arraignment Minutes as Grounds for Habeas Corpus Relief

The Court considers whether the Arraignment Minutes are grounds for relief in this action. First, the Court concludes that the arraignment provided Petitioner with misinformation. The content of the notice given to Petitioner at the arraignment—that he was eligible to receive up to a maximum determinate sentence not to exceed thirty years—is not a permissible sentence found in I.C. § 18-4004. The state district court had only two options: a sentence of death or life imprisonment. A determinate sentence of thirty years is not possible. The state court misinformed Petitioner.

Second, the Court concludes that the misinformation does not support a successful habeas corpus sentencing claim. The failure to inform a defendant of the maximum sentence at the beginning of a criminal case is not a recognized federal constitutional violation. The Court found only one federal case that addressed this issue. In *Dearing v. Chavez*, the United States Court of Appeals for the Ninth Circuit explained, in the context of a plea agreement:

> It is undisputed that the state trial court failed to advise Dearing of his maximum possible sentence before accepting his no contest plea. The only sentence discussed on the record during the plea colloquy was an indeterminate 15-years-to-life sentence for one count. At sentencing, however, Dearing received a determinate 82-year sentence for several other counts in addition to the indeterminate sentence. Dearing maintains that the trial court's omission amounted to a constitutional error. We disagree. Although a trial court has a constitutional obligation to obtain an affirmative waiver of the right against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers, *see Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709,

**MEMORANDUM DECISION AND ORDER - 8**

>  23 L. Ed. 2d 274 (1969), no Supreme Court case mandates that the trial court itself must notify a defendant of his maximum possible sentence before accepting a plea.

408 F. App'x 23, 24 (9th Cir. 2011) (unpublished).

This issue usually arises in the context of a due process claim, where a defendant is misinformed about possible sentencing from an attorney or the court and then accepts or declines to accept a plea agreement based on the mistake. *See, e.g.*, *United States v. Alvarado-Casas*, 715 F.3d 945, 954 (5th Cir. 2013) ("We agree with Alvarado-Casas that it was error for the district court to inform him that he faced only a ten-year maximum sentence, and that the error was clear and obvious . . . . We disagree, however, that Alvarado-Casas has carried his burden of establishing a reasonable probability that but for the error, he would not have pleaded guilty."); *see also United States v. Hubble*, 772 F.2d 909 (6th Cir. 1985) ("The magistrate found that . . . the sentencing judge's statement regarding a 78-year maximum sentence did not influence defendant's decision to plead guilty, which he had reached prior to the hearing.").

Here, even if Petitioner's misinformed arraignment claim was timely and not procedurally defaulted, it would not warrant any relief, because there is no governing precedent identifying this type of error as a constitutional violation. Even if it were a constitutional violation, Petitioner could not be granted relief unless the error was harmful. *See Brecht v. Abrahamson*, 507 U.S. 619, 619 (1993); *Fry v. Pliler*, 551 U.S. 112, 120 (2007). Petitioner has not asserted that he relied upon the arraignment's incorrect sentence information to plead guilty or to reject a plea offer and proceed to trial, and that, but for the mistake, he would have chosen a different litigation path in his criminal case.

### 4. Discussion of Whether the Statute Permitted a Fixed Life Sentence

Petitioner asserts that the Arraignment Minutes and the language of I.C. § 18-4004 support his position that a life sentence in Idaho was no more than thirty years in 1987-1988. That interpretation is not supported by the Unified Sentencing Act or the 1986 version of § 18-4004, which required that the judge state the minimum fixed period of confinement, which could not be less than ten years.

Further, the Idaho Court of Appeals has explained that, based on a reading of the related statutes together and the legislative history of the statute, a determinate life sentence *is* authorized by the statutory scheme:

> Where, as here, both statutes deal with the same subject matter, sentencing, the statutes are in pari materia. Therefore, I.C. § 18-4004 must be construed harmoniously, if at all possible, with I.C. § 19-2513. *State v. Creech*, [670 P.2d 463 (Idaho 1983)] . . . .
> Idaho Code §§ 18-4004 and 19-2513 were amended in 1986 through passage of House Bill 524, entitled the "Unified Sentencing Act of 1986." The purpose of this Act was to implement a unified system of sentencing which allows judges to impose a sentence containing both a "fixed" component and an "indeterminate" component, requiring, however, that the judge must state what the minimum period of incarceration shall be. The statement of purpose accompanying H.B. 524 explained:
>> Under the unified sentence, the judge imposes a minimum sentence term which must be served and cannot be reduced by commutation, parole or good time but can be reduced for meritorious service plus, at the court's discretion, an indeterminate sentence to begin at the completion of the minimum term. Under this proposal, a court *can impose a purely fixed sentence* but cannot impose a purely indeterminate sentence.

*State v. Paul*, 800 P.2d 113, 114-15 (Idaho Ct. App. 1990) (emphasis added).

In Petitioner's case the sentencing court did not mention the words "minimum period of confinement" in the judgment. No state or federal case law holds that a sentencing court must use the words "minimum term of confinement" in the written judgment. The statute itself states

**MEMORANDUM DECISION AND ORDER - 10**

only that a minimum period of confinement must be stated, and that a maximum "may" be stated.

This statutory provision makes it clear that Petitioner has it backwards: a court is not required to specify a term of years as a minimum imprisonment term; it is required to specify a minimum determinate sentence; and in the case of first degree murder, the minimum determinate sentence can be *no less than* ten years. Because the statutory emphasis is placed on the *determinate* portion, with any indeterminate term being optional, Petitioner's sentence clearly complies with the law. The minimum or the determinate period is life; there is no optional indeterminate period specified; and the total sentence does not exceed the maximum provided by law (death). Thus, this sentence is lawful.

Petitioner argues that the statutory interpretation of the Idaho appellate courts is unconstitutional. A threshold question to be answered before a federal court can engage in an analysis of the constitutionality of a criminal statute is whether a petitioner's claims are issues of pure statutory interpretation. The United States Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law . . . and that we are bound by their constructions except in extreme circumstances." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Generally, federal habeas corpus relief is "unavailable for alleged error in the interpretation or application of state law." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citations omitted), *cert. denied*, 478 U.S. 1021 (1986); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The United States Supreme Court has made it clear that the "deference we owe to the decisions of the state legislatures under our federal system . . . is enhanced where the specification of punishments is

concerned, for these are peculiarly questions of legislative policy." *Gregg v. Georgia*, 428 U.S. 153, 176 (1976) (internal punctuation and citation omitted).

A federal court is bound by a state court's interpretation of state law unless the state court's interpretation is untenable or amounts to an obvious subterfuge to avoid federal review of a constitutional violation. *See Wilbur*, 421 U.S. at 691 n.11 (1975); *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) ("Idaho's interpretation of whether the state judge's order constituted a withholding of judgment or a sentence is a question of state law" and "[t]here is no such subterfuge here").

A "subterfuge" is evident where the particular interpretation of the statutory scheme "frustrate[s] consideration of the due process issue," *Wilbur*, 421 U.S. at 691 n.11, and occurs only in a "highly unusual case," *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008). A "subterfuge" may be present if a state court's interpretation of the statute is inconsistent with prior case law or the interpretation is inconsistent with the statute itself. *Id*.

Petitioner has made a subterfuge argument in his Petition. He states that the federal court must address the

> state's continued failure to follow through with LEGISLATIVE ENACTMENT by Idaho Legislature to correct a known otherwise unconstitutional life sentence statute by DIRECTING ALL DISTRICT JUDGES IN IDAHO TO ADD TO THEIR LIFE SENTENCE JUDGMENTS under LIFE, FIXED LIFE, or LIFE WITHOUT possibility of parole, IF NOT DEATH PENALTY, to further state the following: On all life sentence and judgments it must be stipulated for remainder of life natural life, or until death, this in legislature's own words was so the statute did not have to be disturbed.

(Dkt. 14, pp. 2-3) (verbatim).

Petitioner appears to be arguing a judge must use the exact words, "remainder of life, natural life, or until death" for a sentence to be a lawful fixed life sentence. He provides a copy

**MEMORANDUM DECISION AND ORDER - 12**

of the judgment of Idaho inmate Melvin Dean Hanks, who also made the same unsuccessful sentencing argument. Petitioner argues that, although Hanks' judgment states, "for the determinate term of life," and also "the determinate fixed life sentence," it also should have included the terms "remainder of life, natural life, or until death." (Dkt. 14-1, pp. 14-15). Petitioner argues the Idaho Court of Appeals erred in *State v. Tribe*, 888 P.2d 389 (Idaho Ct. App. 1994), when it used words like "fixed or determinate life sentence without the possibility of parole" rather than "remainder of life, natural life," or "until death." (Dkt. 14-1, p. 12).

Petitioner's "subterfuge" argument is unsupported by law. Petitioner does not point to a statute in effect at the time of his crime or sentence that uses or requires his preferred language. The Court finds nothing in Idaho law (or federal law) requiring a court to use certain language to pronounce a fixed life sentence. Petitioner has simply created his own interpretation of I.C. § 18-4004, which does not comport with the statutory scheme.

The Idaho appellate courts' reasoning that a sentence of life without parole is within the statutory limits and represents a pronouncement of the required "minimum" or "fixed" period is a reasonable interpretation of the statutory scheme. Because this interpretation is reasonable, Petitioner's argument that this interpretation is nothing but a subterfuge to avoid federal review must be rejected. Therefore, this Court must accept the Idaho courts' interpretation of these state statutes.

### 5. Discussion of Whether the 1986 Statutes Show That a Life Sentence Equals No More Than Thirty Years

The 1986 statutes do not mention "thirty years" as a benchmark, an outer boundary, or at all. Therefore, the Court turns to Idaho case law to determine the statutory interpretation.

In *State v. Wilson*, 690 P.2d 1338 (Idaho 1984), a prisoner argued that the *King* parole rule meant a prisoner with an indeterminate life sentence should be entitled to *full release and termination of their sentence* after serving thirty years. That argument—which mirrors Petitioner's argument here—was rejected, based on the following background and reasoning:

> By its 1977 amendment to I.C. § 18-4004, the Legislature said that a person guilty of first degree murder 'shall be punished by death or by imprisonment for life.' This mandatory language is plain and direct. It deserves to be given literal treatment if the result is reasonable and in harmony with other statutory provisions on the subject. It means simply that, if imprisonment is to be the punishment, the sentence must be for life. It may be either a fixed or indeterminate life sentence. With an indeterminate life sentence, other statutes come into play which define parole eligibility and give the commission of pardons and paroles the authority to determine the actual length of confinement. Those statutes have little or no applicability to a fixed sentence and we need not look to those statutes to determine the meaning of a fixed sentence.
>
> It is asserted by defendant that the trial court erred in the length of the sentence imposed. Defendant contends that a determinate fixed life sentence is imprecise, indefinite, indeterminate, impermissible, and "anything but fixed or determined." We disagree. As the Court of Appeals stated, [] "Although the duration of one's life may not be fixed or determined at the time sentence is imposed, this does not mean that a fixed life sentence has an uncertain meaning. The custodial responsibility of the Board, and the deprivation of the prisoner's liberty, are as fixed and determined by such a sentence as any court can make them."

*Id*. at 1341 (internal citations omitted).

In the face of continuing claims from prisoners with life sentences arguing that they were entitled to a full release after thirty years, the Court of Appeals later clarified that "under Idaho law, a life sentence is not and never has been a thirty-year sentence, nor is there any 'custom and usage' making it so." *State v. Murphy*, 158 P.3d 315, 316 (Idaho Ct. App. 2007).

Here, Petitioner's claims meet the same fate as those in *Wilson*. At the time of his crime and sentence, a life sentence *was a life sentence*, and it could be *with* the possibility of parole or

**MEMORANDUM DECISION AND ORDER - 14**

*without* the possibility of parole. As to the former option, the sentencing court was required to specify an exact number of years to be served before parole consideration; obviously, as to the latter option, no exact number of years would be specified in the judgment if the minimum term was "life" and there was no possibility of parole, as in Petitioner's judgment. Petitioner's argument has no legal or factual support.

### 6. Summary and Conclusion

Circling back to the critical issue for habeas corpus relief, the Court concludes that the record shows Petitioner never had a full-term sentence release date. Petitioner's judgment clearly specifies "the FIXED term of life; no portion of the sentence to be indeterminate; to be held in confinement without possibility of parole." (Dkt. 14-1, p. 2). Petitioner's sentence challenge is the same as that rejected in *Hanks v. State*, 2020 WL 974166 *4 (Idaho Ct. App. 2020) (unpublished) ("[I]t is clear that the district court's determinate life sentence [in 1984] meant incarceration for Hanks's full natural life with no possibility of release through sentence expiration or probation, even after thirty years"; while "transcripts of the sentencing hearing do not exist, all documents in the record show the district court sentenced Hanks to a determinate life term and *did not impose any additional qualifications upon the sentence*." *Id*. (emphasis added).

The Court has considered whether the Arraignment Minutes are accurate or mistaken as to the maximum possible sentence for the crime of murder in the first degree in 1986. The plain statutory language of § 18-4004 shows that they are a mistake—whether made by the state judge or the transcribing clerk. Nothing in the Idaho statutory scheme or case law supports any of

Petitioner's legal theories or factual assertions behind his claim that he was entitled to release after serving thirty years of a "fixed" life sentence.

The Idaho appellate courts' consistent and reasonable interpretation of Idaho murder sentencing statutes is binding upon the federal court, and Petitioner can show no "subterfuge" that would create an exception allowing federal review.

Having looked at this case from every angle, the Court concludes that federal habeas corpus relief is not warranted. To the extent that the Court has not expressly rejected each and every argument, issue, subclaim, and cumulation of claims Petitioner has made, the Court concludes that they do not warrant relief. The Petition for Writ of Habeas Corpus will be dismissed with prejudice.

**ORDER**

**IT IS ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 2) is DENIED on the merits.

2. Petitioner's Motion for an Order (Dkt. 18) is DENIED, to the extent that he asserts that he is entitled to release.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the

Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: December 15, 2023

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge